## City of Chicago
## v.
## Schooner "Queen City."

1. ATTACHMENT OF WATER CRAFT.—The court is of opinion that section 1 of the act, entitled, " Attachment of Water Craft " is not to be read as though the word "used" was preceded by the word " exclusively," and that the averments of the petition in this cause bring the case within the first clause of the statute.

2. SAME—JURISDICTION.—Where the claim was "for damage done by a vessel to the Adams street viaduct and the stone abutment of Adams street bridge," and also " for damage done to the north approach to Canal street bridge on North Halsted street." *Held*, this was not a marine tort, and was properly brought under the State law.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding. Opinion filed November 25, 1885.

This is an attachment proceeding, brought by the city of Chicago against the schooner "Queen City," under the provisions of chapter 12 of the Revised Statutes, entitled "Attachment of Water Craft." The petition sets forth, in substance, that the city has a claim against the schooner Queen City for $336.33, for damages done to the Adams street viaduct and the stone abutment of Adams street bridge by said schooner, and also a like claim for $21.70, for damages done to the north approach to Canal street bridge, on North Halsted street; that said schooner is a water craft of above five tons burden, and was used in navigating the waters of this State when said injuries were done; that said amounts were due and unpaid; that the name and residence of the owner of said schooner were unknown to petitioner, etc.

To this petition John Kelderhouse, claiming to be the owner of the schooner, appeared and filed exceptions, setting up that he was a resident of the city of Buffalo, in the State of New York; that said city of Buffalo was the home port of said schooner; that at the time when, etc., the said schooner was,

and ever since has been, enrolled and licensed for the coasting trade by the government of the United States, and was, and ever since has been, and now is employed in commerce and navigation upon the Great Lakes and navigable waters connecting the same; concluding with the allegation that the court has no jurisdiction over the said vessel, etc., and praying that the petition be dismissed.

To this answer or exception the city demurred, which demurrer the court overruled and dismissed the petition. The city duly excepted, and appealed to this court.

Mr. Hempstead Washburne and Mr. Clarence A. Knight, for appellant; that the tort was not a marine tort, cited Johnson v. Elevator Co., 105 Ill. 462; Schooner Norway v. Jensen, 52 Ill. 37 3; Knisely v. Parker, 34 Ill. 482; Canal boat Col. Mulligan v. Buck, 55 Ill. 425; Barque Great West No. 2 v. Oberndorf, 57 Ill. 168; Tug boat E. P. Dorr v. Waldron, 62 Ill. 221; Williamson v. Hogan, 46 Ill. 504; Tug Montauk v. Walker, 47 Ill. 335; Knisely v. Parker, 34 Ill. 482.

Messrs. Schuyler & Kremer, for appellee; as to the construction of the act, cited Moore v. Am. Trans. Co., 24 How. 1.

The Chicago river being capable of floating vessels engaged in inter-state commerce, is, therefore, navigable water of the United States: Escanaba & Lake Michigan Trans. Co. v. City of Chicago, 107 U. S. 7; Ashbrook v. Steamer Golden Gate, Newbury's Admiralty Reports, 297.

Wilson, J. Section 1 of the act entitled "Attachment of Water Craft," provides that "every sail vessel, steamboat, steam dredge, barge, lighter, and other water craft of above five tons burden, used or intended to be used in navigating the waters or canals of this State, or used in trade or commerce between ports and places within this State, or having their home port in this State, shall be subjected to a lien thereon, which lien shall extend to the tackle, etc., for all damages for injuries done to persons or property by such water craft,

whether the same are aboard said vessel or not, where the same shall have accrued through the negligence or misconduct of the owner, agent, master or employe thereon."

It will be noticed that the statute specifies three classes of cases: first, vessels used or intended to be used in navigating the waters or canals of this State ; second, those used in the trade or commerce between ports and places within this State ; and third, those having their home port in this State. The case confessedly falls within the first class, if either. It is claimed by the counsel for appellee that the words " used or intended to be used in navigating the waters of this State," must be read as though the word "used" was preceded by the word "exclusively." And it is argued that if the act had been intended to apply to vessels like the Queen City it would have been unnecessary to create any other class or classes than the first, since all classes would be embraced within the first, if it were broad enough to cover this case.

While the construction contended for is plausible and, perhaps, not wholly without force, we do not feel at liberty to interpolate into the statute words which would essentially change its plain and obvious meaning. The act of 1845 provided that " boats and vessels of all descriptions built, repaired or equipped, or running upon any of the navigable waters of this State shall be liable," etc. That act was amended by the act of 1857, which provided " that steamboats and other water crafts navigating the waters within or bordering upon this State, shall be liable," etc. In the act of 1874 the language is " every vessel used or intended to be used in navigating the waters or canals of this State shall be subject," etc.

The language of these several acts is broad and comprehensive, embracing every and all vessels actually used in navigating the waters or canals of the State, and indicate clearly the intention of the legislature to furnish a convenient remedy for violations of the statute in the State courts. As was said in Knisely v. Parker, 34 Ill. 482, " vessels of that character are usually owned by non-residents or persons not generally known. To give a speedy and sure remedy for debts they might contract is wise and just, and this, doubtless, was the controlling

reason for its enactment." See also Tug boat Dorr v. Waldron, 62 Ill. 231; Canal boat Mulligan v. Buck, 55 Id. 429. The statute, both before and subsequent to the amendments of 1857 and 1874, has many times come under review by the Supreme Court, but in no case has it ever been held that a vessel having its home port in another State is excepted from the provisions of the Water Craft Act when navigating the waters or canals of this State. Knisely v. Parker, 34 Ill. 482; Tug Montauk v. Walker, 47 Id. 335; Williamson v. Hogan, 46 Id. 504; Schooner Norway v. Jensen, 52 Id. 373; Barque Great West v. Oberndorf, 57 Id. 168; Canal boat Mulligan v. Buck, 55 Id. *supra;* Tug boat Dorr v. Waldron, 62 Ill. *supra;* Propeller Hilton v. Miller, 62 Id. 231; Langdon v. Wilcox, 102 Id. 606; Johnson v. Elevator Co., 105 Id. 462. We are of opinion that the averments of the petition bring the case within the first clause of the statute.

In the case of The Hine v. Trevor, 4 Wal. 566–69, the general question as to the jurisdiction of a State court in cases like the present was elaborately discussed, and it was held that the jurisdiction of the district courts of the United States on the lakes and navigable waters connecting the same, was governed by the act of Congress of 1845, and that the jurisdiction is not exclusive, but concurrent with such remedies as may be given by State laws. See also Tug boat Dorr v. Waldron, 62 Ill., *supra,* where the authorities on this subject are fully reviewed by Breese, C. J.

But aside from this, we think it clear, under the facts alleged in the petition, that the injury complained of was not a marine tort, and therefore was not cognizable in the federal courts. The claim is "for damage done to the Adams street viaduct, and the stone abutment of Adams street bridge," and also "for damage done to the north approach to Canal street bridge on North Halsted street." The case falls directly within that of The Plymouth, 3 Wal. 20. There the Propeller Falcon, employed by its owners in navigating our great lakes, anchored beside a wharf in the Chicago river. Owing to the negligence of those in charge of the Falcon, the vessel took fire, and the flames

stretching themselves to the wharf and packing houses stand-ing thereon, the latter took fire and with their contents were consumed. The case was very ably argued before the Su-preme Court of the United States by the late Mr. Arrington in favor of the admiralty jurisdiction, but the Supreme Court held that the injury must have been wholly committed upon the water, or at least the substance and consummation of the same must have taken place there to be within admiralty jurisdiction, and the petition was accordingly dismissed. So in Johnson v. The Chicago and Pacific Elevator Co., 105 Ill. 462, a parallel case with the present, it was held by our Su-preme Court, that though the cause of the injury originated on the water, its consummation was on the land, and the tort complained of was not a maritime tort.

Here the structures injured, the approaches to the bridge, the abutments and the bridge itself, rested upon the land, and hence the case is not cognizable in an admiralty court, but was properly brought under the State law.

The judgment of the court below is reversed and the cause remanded for further proceedings.

Reversed and remanded.